IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VINCENT D. ALLEN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 09-938-JJF |
| | : |
| AARON PRINCE, DEP. WARDEN | : |
| EVANS, LT. MOFFETT, | : |
| SGT. HERNANDEZ, LT. WILSON, | : |
| and JIM ELDER and | : |
| CEC ADMINISTRATOR, | : |
| | : |
| Defendants. | : |

Vincent D. Allen, Pro se Plaintiff.  Howard R. Young Correctional
Institution, Wilmington, Delaware.

**MEMORANDUM OPINION**

June 21, 2010
Wilmington, Delaware

Farnan, District Judge

Plaintiff Vincent D. Allen ("Plaintiff"), an inmate at the Howard R. Young Correctional Institution, Wilmington, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] At the time he filed the Complaint, Plaintiff was housed at the Central Violation of Probation Center ("CVOP"), Smyrna, Delaware. He appears pro se and has been granted leave to proceed in forma pauperis. (D.I. 4.) For the reasons discussed below, the Court will allow Plaintiff to proceed against Defendants Deputy Warden Evans, Lt. Moffett, and Sgt. Hernandez on the equal protection/race discrimination claims and will dismiss as frivolous the remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(3).

## I. BACKGROUND

Plaintiff was housed at the Plummer Community Correction Center ("Plummer"), Wilmington, Delaware. On August 3, 2009, the vending machines in Plummer's multi-purpose room were left unlocked and items were taken from them. Defendants Lt. Moffett ("Moffett") and Sgt. Hernandez ("Hernandez") conducted an investigation and reviewed video-recordings of the room, but they were unable to positively identify the residents who took items.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Moffett informed Defendant Deputy Warden Evans ("Evans") that she was unable "to see anyone taking items from the vending machine." (D.I. 2, ¶ 2 statement of facts.) Moffett told Evans and Deputy Warden Williams ("Williams") that the hallway camera recording of August 3, 2009, showed residents walking to Plummer and the Crest program housing units with items.[2]

On August 31, 2009, Plaintiff was handcuffed and shackled and then questioned by Hernandez. Following questioning, he was transferred to the Sussex Violation of Probation Center ("SVOP"), Sussex, Delaware, with five other black residents. Later, an emergency Multi-Disciplinary Team ("MDT") hearing was held and Plaintiff was found guilty. Evans, Williams, Moffett, and Hernandez were present at the hearing. Throughout the questioning and hearing Plaintiff remained handcuffed and shackled. Plaintiff alleges that he was not advised of his right to appeal, to see evidence, to a fair and impartial hearing, to counsel, or provided a copy of the MDT report and vote. Plaintiff alleges that Moffett ordered Hernandez to falsify the MDT report because "the deputy warden" wanted to go home. Plaintiff alleges the Moffett's statements denied him the right to a fair and impartial hearing and created racial prejudice. Plaintiff who is black, alleges that Moffett and Hernandez

---

[2]Jim Elder, the Administrator of Community Education Centers, Inc. ("CEC")and Statewide Crest Director is named as a defendant.

treated him, and other black inmates,[3] differently than white residents.[4]  Plaintiff received a sanction of twenty-eight days SVOP including loss of visits, telephone calls, home passes, employment, and road gang work detail.  He alleges violations of his right to due process and equal protection.

Plaintiff returned to the Crest program on September 1, 2009, on sanction return status for twenty-eight days.  Per orders of Defendant Aaron Prince ("Prince"), Director of the Crest Program, Plaintiff remained on sanction return status after the sanction's end.

On October 6, 2009, Defendant Lt. Wilson ("Wilson") Wilson informed a prison counselor that Plaintiff had "disrepected" him, Prince sanctioned Plaintiff with a twenty-one day learning experience and loss of all privileges, with a warning of a harsher sanction.  On October 9, 2009, counselor Traylor

---

[3]It appears that Plaintiff attempts to raise claims on behalf of other black inmates, but he lacks standing to raise their claims.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Allen v. Wright, 468 U.S. 737, 751 (1984); Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003).

[4]For example, Plaintiff alleges that several white residents were identified and questioned and Moffett allowed them to see tapes showing their involvement.  The white residents were told to admit what they took and "it [wouldn't] be that bad."  The white residents were allowed to return to the housing area.  They were not handcuffed, shackled, placed in holding cells, given an emergency MDT hearing, or transferred to the SVOP for a twenty-eight day sanction.  Plaintiff has alleged what appear to be cognizable and non-frivolous equal protection/race discrimination claims.

("Traylor") added a seven day sanction to the learning
experience.

Plaintiff submitted a grievance and, after inspecting
Plaintiff's dormitory, counselor Marie Mason ("Mason") gave him
a seven day learning experience with a loss of all privileges, to
run consecutive to Traylor's sanction.  Plaintiff next submitted
a grievance complaining of Mason's actions.  To date, Plaintiff's
grievances have not been heard.  He alleges that Prince's
policies intentionally delay the grievance procedure and violate
his right to due process and equal protection.

Plaintiff alleges that Prince violated his Eighth Amendment
rights by placing him under the supervision of a resident with
authority to assign additional work details and who required him
to eat last.  Plaintiff further alleges that Prince has eight
residents living in a housing area meant to accommodate four to
five residents, the restrooms in the Crest program have
deplorable plumbing, and the toilet area is covered with toilet
leakage.

Finally, Plaintiff alleges that during a October 21, 2009
meeting, Prince violated his right to privacy and confidentiality
when he made inflammatory and criminal statements to Evans that
he had received a note that Plaintiff "was gonna 'shoot' John Doe
once [he] was released."  Plaintiff alleges that Prince made the
statements in an effort to discredit his pending complaints

4

against Prince. Plaintiff seeks compensatory and punitive damages, Prince's dismissal as program director, immediate release from prison and/or level three probation and parole time.

## II. STANDARD OF REVIEW

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds pro se, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an

5

indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.  <u>Neitzke</u>, 490 at 327-28; <u>Wilson v. Rackmill</u>, 878 F.2d 772, 774 (3d Cir. 1989); <u>see</u>, <u>e.g.</u>, <u>Deutsch v. United States</u>, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions.  <u>Tourscher v. McCullough</u>, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).  However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 114 (3rd Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions.  <u>See</u> <u>Ashcroft v. Iqbal</u>, -U.S.-, 129 S.Ct. 1937 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements."  <u>Id.</u> at 1949.  When

determining whether dismissal is appropriate, the Court conducts

a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210

(3d Cir. 2009).  First, the factual and legal elements of a claim

are separated.  Id.  The Court must accept all of the Complaint's

well-pleaded facts as true, but may disregard any legal

conclusions.  Id. at 210-11.  Second, the Court must  determine

whether the facts alleged in the Complaint are sufficient to show

that Plaintiff has a "plausible claim for relief."[5]  Id. at 211.

In other words, the Complaint must do more than allege

Plaintiff's entitlement to relief; rather it must "show" such an

entitlement with its facts.  Id.  "[W]here the well-pleaded facts

do not permit the court to infer more than a mere possibility of

misconduct, the complaint has alleged - but it has not shown -

that the pleader is entitled to relief."  Iqbal,129 S.Ct. at 1949

(quoting Fed. R. Civ. P. 8(a)(2)).

## III.  DISCUSSION

### A.  Personal Involvement/Respondeat Superior

Plaintiff names Elder as a defendant, but the Complaint

contains no allegations directed towards him.  Elder is the CEC

---

[5]A claim is facially plausible when its factual content
allows the Court to draw a reasonable inference that the
defendant is liable for the misconduct alleged.  Iqbal,129 S.Ct.
at 1949 (quoting Twombly, 550 U.S. at 570).  The plausibility
standard "asks for more than a sheer possibility that a defendant
has acted unlawfully."  Id.  "Where a complaint pleads facts that
are 'merely consistent with' a defendant's liability, it 'stops
short of the line between possibility and plausibility of
'entitlement to relief.'"  Id.

Administrator and Statewide Crest Director.  It appears that he
has been named as a defendant based upon his supervisory
position.

Liability in a § 1983 action cannot be predicated solely on
the operation of respondeat superior.  Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).  A plaintiff
may set forth a claim for supervisory liability under § 1983 if
he "(1) identif[ies] the specific supervisory practice or
procedure that the supervisor failed to employ, and show[s] that
(2) the existing custom and practice without the identified,
absent custom or procedure created an unreasonable risk of the
ultimate injury, (3) the supervisor was aware that this
unreasonable risk existed, (4) the supervisor was indifferent to
the risk; and (5) the underling's violation resulted from the
supervisor's failure to employ that supervisory practice or
procedure."  Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir.
2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.
1989)).  It is not enough for a plaintiff to argue that the
alleged injury would not have occurred if the supervisor had
"done more."  Id.  He must identify specific acts or omissions of
the supervisor that evidence deliberate indifference and
establish a link between the act or omission and the ultimate
injury.  Id.

8

In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)). There is nothing in the Complaint to indicate that Elder was the "driving force [behind]" Plaintiff's alleged constitutional violations. Accordingly, the Court will dismiss the claim against Elder as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B).

## B.  Due Process

Plaintiff alleges that his right to due process was violated during the emergency MDT hearing. More specifically, he alleges that he was not advised of his right to appeal, to see evidence, to a fair and impartial hearing, to counsel, or provided a copy of the MDT report and vote. He also appears to allege due process violations when he received "learning experience" sanctions. Following the MDT hearing Plaintiff received a sanction of return to status for twenty-eight days. He also received other "learning experience" sanctions ranging from seven to twenty-one days. In reading Plaintiff's specific allegations, it is evident that the gist of his claims is that he was subjected to discipline without due process of law.

9

Plaintiff's claim that he was denied due process lacks legal merit. It is axiomatic that to be entitled to procedural due process protections as set forth in <u>Wolff v. McDonnell</u>, a prisoner must be deprived of a liberty interest.[6] <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557-58 (1974). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed." <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic

---

[6]While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of a criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-57 (1974); <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991). A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 at 563-71; <u>Griffin v. Spratt</u>, 969 F.2d 16, 19-20 (3d Cir. 1992). Hence, inmates do not have an absolute constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. <u>See</u> <u>Wolff</u> at 567-68. Further, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in <u>Wolff</u>. <u>See</u> <u>Bruton v. Denny</u>, Civ. No. 06-744-SLR, 2007 WL 1576341, at *3 (D. Del. May 30, 2007); <u>Counterman v. Fauver</u>, Civ. No. 83-4839, 1989 WL 200954 (D.N.J. Nov. 24, 1989); <u>Garfield v. Davis</u>, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); <u>Greer v. DeRobertis</u>, 568 F. Supp. 1370 (N.D. Ill. 1983).

10

prison conditions. <u>See</u>, <u>e.g.</u>, <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).

As to Plaintiff's claims that Moffett, Hernandez, and Wilson filed a false MDT report or false disciplinary charge that resulted in related disciplinary sanctions, this, without more, does not violate Plaintiff's constitutional rights under the Due Process Clause. <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3d Cir. 2002).

Moreover, the discipline meted to Plaintiff did not result in an atypical or significant deprivation that would give rise to a liberty interest under <u>Sandin</u>. Hence, Plaintiff's inability to see evidence, as well as any other alleged procedural defects, lacks legal significance in the absence of any protectable interest. <u>See</u> <u>Sandin</u>, 515 U.S. at 487; <u>see also</u> <u>Williams v. Bitner</u>, 307 F. App'x 609 (3d Cir. 2009) (not published). Based upon the relatively short duration of punishment (i.e., ranging from seven to twenty-eight days for various offenses), Plaintiff lacks the requisite liberty interest to implicate a due process violation.

As Plaintiff has not articulated a protected liberty
interest, the Court will dismiss the due process claims as
frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and §
1915A(b)(1).

## C.  Grievances

Plaintiff alleges that Prince's policies intentionally delay
the grievance procedure.  "[T]he filing of prison grievances is a
constitutionally protected activity."  Winn v. Department of
Corr., 340 F. App'x 757, 759 (3d Cir. 2009) (not published)
(quoting Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003)).
However, "[w]hen the claim underlying the administrative
grievance process involves a constitutional right, the prisoner's
right to petition the government for redress is the right to
access the courts, which is not compromised by the prison's
refusal to entertain his grievance."  Winn, 340 F. App'x at 759
(quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

To the extent that Plaintiff bases his claims upon his
dissatisfaction with the grievance procedure, the delay of the
grievance procedure, or denial of his grievances, the claims fail
because an inmate does not have a constitutionally protected
right to a grievance procedure.  Caldwell v. Beard, 324 F. App'x
186, 189 (3d Cir. 2009) (not published) (citing Flick v. Alba,
932 F.2d 728, 729 (8th Cir. 1991)); Gay v. Shannon, 211 F. App'x
113, 116 (3d Cir. 2006) (not published); Antonelli v. Sheahan, 81

12

F.3d 1422, 1430 (7th Cir. 1996) (allegedly inadequate grievance
procedures did not give rise to a constitutional claim).

Plaintiff cannot maintain a constitutional claim based upon
his perception that his grievances were not properly processed or
that the grievance process is inadequate. For the above reasons,
the Court will dismiss the grievance claims as frivolous pursuant
to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## D. Conditions of Confinement

Plaintiff claims Eighth Amendment violations based upon the
allegations that Prince has eight residents living in a housing
area meant to accommodate four to five residents, the restrooms
in the Crest program have deplorable plumbing, and the toilet
area is covered with toilet leakage. He alleges the conditions
produce health threatening viruses and bacteria.

A condition of confinement violates the Eighth Amendment
only if it is so reprehensible as to be deemed inhumane under
contemporary standards or such that it deprives an inmate of
minimal civilized measure of the necessities of life. See Hudson
v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S.
294, 298 (1991). When an Eighth Amendment claim is brought
against a prison official it must meet two requirements: (1) the
deprivation alleged must be, objectively, sufficiently serious;
and (2) the prison official must have been deliberately
indifferent to the inmate's health or safety. Farmer v. Brennan,

13

511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff alleges objectionable conditions of confinement that include lack of hygiene and/or sanitation. The denial of "basic sanitation . . . is 'cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose.'" Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). The allegations, however, do not allege sufficient personal involvement in the denial of inhumane conditions of confinement. For instance, Plaintiff fails to allege that Prince has any involvement in the maintenance, plumbing, or housing assignments.

Basically, Plaintiff's claims fall under the auspices of negligence. Mere negligence claims do not constitute "deliberate indifference." See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 193 n.2 (3d Cir. 2001) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Davidson v. Cannon, 474 U.S. 344, 347 (1986). Notably, the allegations do not indicate that Prince was aware of a risk of a serious injury that could occur and purposefully failed to take appropriate steps. Plaintiff's conclusory allegation that the area is a "health

14

hazard" without more, does not adequately indicate that Plaintiff's health and safety were at risk. See Hassine v. Jeffes, 846 F.2d 169, 174-75 (3d Cir. 1988); see also Guinn v. Rispoli, 323 F. App'x 105, 109 (3d Cir. 2009) (not published).

Finally, Plaintiff does not allege that he suffered any physical injury as a result of the conditions. The Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

For the above reasons, the Court will dismiss the conditions of confinement claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(e).

**E. Work Detail**

Plaintiff alleges that Prince placed another resident in a supervisory position and that resident mentally and physically abused Plaintiff when he assigned Plaintiff an added work detail and required him to eat last. The claim is frivolous. The Court will dismiss the claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1)

**F. Right to Privacy**

Plaintiff alleges that Prince violated his right to privacy and confidentiality when he made inflammatory and criminal

15

statements when he told Evans that he had received a note that Plaintiff "was gonna 'shoot' John Doe once [he] was released." Plaintiff alleges that Prince made the statements in an effort to discredit complaints Plaintiff had against Prince.

An individual has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). While inmates do not shed all fundamental protections of the Constitution upon imprisonment, it is only those rights that are not inconsistent with their prison status or with legitimate penological objectives that will be protected. Wolff, 418 U.S. at 555; see also Doe v. Delie, 257 F.3d 309, 316-319 (3d Cir. 2001) (the Due Process Clause of the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests).

Here, Plaintiff alleges that Prince discussed a note that Plaintiff intended to commit an act of violence upon his release from prison. Within the prison environment, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." Wilkinson v. Austin, 545 U.S. 209, 227 (2005). Of import is that the legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy. Bell v. Wolfish, 441 U.S. 520, 539-41 (1979).

The statements of Prince clearly related to the safety of the public and far outweigh any right of privacy Plaintiff may have.  The claim is frivolous and the Court will dismiss the claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## G. Costs

Plaintiff, who has been granted leave to proceed in forma pauperis, claims that requiring him to bear the total costs of copies and postage places him at an unfair advantage and violated his civil rights and right to equal protection.  He requests a waiver with respect to photocopy and postage costs.  (D.I. 9.)

The law is well-settled that pro se inmates must pay for the expenses involved in their civil actions, even if the inmate is proceeding in forma pauperis.  See Tabron v. Grace, 6 F.3d 146, 159 (3d Cir. 1993) (holding that 28 U.S.C. § 1915 does not require the government to pay the costs of deposition transcripts or any other litigation expenses, and that no other federal statute authorizes courts to commit federal monies for payment of the necessary expenses of litigation).  Although Plaintiff is allowed to proceed pursuant to 28 U.S.C. § 1915, without prepayment of fees, he is still required to pay for copies and postage.  For the above reasons, the Court will deny the Letter/Motion.

## IV. CONCLUSION

For the reasons discussed, the Court will allow Plaintiff to proceed against Evans, Moffett and Hernandez on the equal protection/race discrimination claims and will dismiss as frivolous the remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(3).

An appropriate Order will be entered.