IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VINCENT D. ALLEN,                    :
                                     :
        Plaintiff,                   :
                                     :
   v.                                :   Civ. No. 09-938-LPS
                                     :
DEP. WARDEN EVANS, et al.,           :
                                     :
        Defendants.                  :

---

Vincent D. Allen, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

March 29, 2011
Wilmington, Delaware

Stark, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Vincent D. Allen ("Plaintiff"), an inmate at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] He filed an amended complaint subsequent to service and a motion to amend the complaint following service. When the initial complaint was filed, Plaintiff was housed at the Central Violation of Probation Center ("CVOP") in Smyrna, Delaware. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) Following screening of the original Complaint, Plaintiff was allowed to proceed against Defendants Deputy Warden Evans ("Evans"), Lt. Moffett ("Moffett"), and Sgt. Hernandez ("Hernandez") on equal protection/race discrimination claims. (D.I. 10, 11) All other claims and defendants were dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(3).

## II. BACKGROUND

As set forth in the original Complaint (D.I. 2), Plaintiff was housed at the Plummer Community Correction Center ("PCCC") in Wilmington, Delaware and was participating in the Crest treatment program. On August 3, 2009, the vending machines in the multi-purpose room were left unlocked and items were taken from them. As a result, Plaintiff was transferred to the Sussex Violation of Probation Center ("SVOP") in Sussex, Delaware. He received disciplinary charges, was found guilty, and received a sanction of twenty-eight days at the SVOP. Plaintiff

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1

who is black, alleges that Moffett and Hernandez treated him differently from white residents.[2]

Plaintiff returned to the Crest program on September 1, 2009. Thereafter, Plaintiff submitted several grievances complaining of actions taken by Lt. Wilson and counselor Marie Mason.[3]

Plaintiff filed an Amended Complaint on November 3, 2010, and a Motion for Leave to Amend on December 2, 2010. (D.I. 21, 25) The Amended Complaint reinstates Defendant Jim Elders ("Elders") and adds new Defendants Andrew Rosen ("Rosen"), Abdull Salaam ("Salaam"), Bruce Williamson ("Williamson"), Eric Robinson ("Robinson"), and Levern Lang ("Lang"). The only difference between the Amended Complaint and the proposed Second Amended Complaint is the reinstatement of Defendant Aaron Prince ("Prince").[4] Accordingly, the Court will grant the Motion for Leave to Amend. (D.I. 25)

The Second Amended Complaint alleges that during the summer of 2009, Plaintiff began seeing mental health counselor Carol Marvel ("Marvel") at the PCCC for treatment of psychological abuse and fear of retaliation by Salaam, Prince, Evans, and Robinson, but Marvel failed to act and did not investigate Plaintiff's charges of abuse.[5] In September 2009, Plaintiff

---

[2]For example, Plaintiff alleges that several white residents were identified and questioned and Moffett allowed them to see tapes showing their involvement. The white residents were told to admit what they took and "it [wouldn't] be that bad." The white residents were allowed to return to the housing area. They were not handcuffed, shackled, placed in holding cells, given an emergency MDT hearing, or transferred to the SVOP for a twenty-eight day sanction. Plaintiff has alleged what appear to be cognizable and non-frivolous equal protection/race discrimination claims.

[3]Wilson was dismissed as a defendant when the original complaint was screened. Mason is not a named defendant.

[4]The claims in the original Complaint against Elders and Prince were dismissed upon its initial screening.

[5]Marvel is not a named defendant.

was noticed to appear in Family Court for a child support proceeding. The matter was continued. Plaintiff wished to be physically present at the hearing. Salaam would not allow Plaintiff's physical presence at the hearing, but gave Plaintiff the opportunity to participate via telephone. Plaintiff refused because "it was not consistent with his rights to cross examination and the right to confront witnesses." Plaintiff alleges this action was taken by Salaam in retaliation for Plaintiff's filing of his Complaint and other grievances he submitted.

On March 5, 2010, after Prince referenced the filing of this lawsuit, he and Plaintiff engaged in a confrontation, and a few hours later Plaintiff was awaked by Williamson and placed in restraints. Plaintiff alleges that Prince made a false report against him in retaliation for filing his complaint. Lang issued an administrative warrant and, as discussed below, Plaintiff's parole was subsequently revoked. The same day, Williamson confiscated Plaintiff's personal property, valued at two thousand, five hundred dollars. Plaintiff was transferred to the HRYCI, but Williamson did not transfer Plaintiff's property with him. Plaintiff alleges the actions were taken as retaliation for the complaints he filed. In addition, Plaintiff alleges that Prince, Lang, Evans, and Williamson conspired to deprive him of his right to due process.

Plaintiff was scheduled for a parole hearing during the summer of 2010. The Second Amended Complaint contains several allegations regarding events leading up to the parole hearing and the hearing itself. Plaintiff alleges that prior to the parole hearing, Evans contacted the Board of Parole Chairperson Holden ("Holden") regarding grievances and complaints that Plaintiff had filed and submitted. Holden advised Plaintiff to dismiss them. Holden and Evans attend the same church and, according to Plaintiff, Evans used that relationship to pressure Plaintiff into dismissing internal complaints, all of which contributed to the lack of a fair and

impartial tribunal during the parole hearing. On July 9, 2010, Rosen, an attorney in the Delaware Public Defender's Office, informed Plaintiff that he would advise the Parole Board that Plaintiff would proceed *pro se*. Rosen, however, appeared at the hearing and entered his appearance on Plaintiff's behalf. Plaintiff alleges that Rosen's involvement caused prejudice at the hearing. Plaintiff alleges that during the parole revocation hearing held on August 10, 2010, Salaam gave "retaliatory testimony" and specifically testified that Plaintiff had submitted a grievance against him. Finally, Plaintiff alleges that on unknown dates, he submitted numerous abuse complaints with Elders, supervisor of Prince and Robinson, but no action was taken to "abate the abusive pattern" by Defendants. Plaintiff contends that the subsequent parole revocation arose only after Defendants became aware of Plaintiff's § 1983 complaint.

Finally, Plaintiff alleges that he complained to unknown individuals concerning the calculation of his sentence credits by the Delaware Department of Correction. Plaintiff alleges that he has been denied his rightly earned diminution of confinement credits to the extent that he has served twenty-seven years on a thirty-three year sentence despite years of program participation and working within the prison system. Plaintiff raised this issue in his State habeas proceeding, but he contends that the State Court refused to address it. Finally, Plaintiff alleges that Defendants and others illegally applied the calculations retroactively to his sentence.

### III. STANDARD OF REVIEW

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis*

4

actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Cherricks proceeds *pro se*, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Cherricks leave to amend her complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*,

129 S.Ct. at 1949. When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11.

Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Cherricks has a "plausible claim for relief." *Id.* at 211. In other words, the Complaint must do more than allege Plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 129 S.Ct. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

## IV. DISCUSSION

### A. Conspiracy

Plaintiff alleges that Prince, Lang, Evans, and Williams conspired to deprive him of his right to due process, following issuance of an administrative warrant and transfer to the HRYCI. For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right. *See Williams v. Fedor,* 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd,* 211 F.3d 1263 (3d Cir. 2000); *see also Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir. 1993)

(stating plaintiff must show that two or more conspirators reached agreement to deprive plaintiff of constitutional right under color of law); *Kelley v. Myler*, 149 F.3d 641, 648-49 (7th Cir. 1998) (stating agreement or understanding to deprive plaintiff of constitutional rights must exist).

The complaint does not contain sufficient allegations that indicate a deprivation of Plaintiff's constitutional rights or that Defendants reach an agreement to deprive Plaintiff of his constitutional rights. Therefore, the conspiracy claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) as frivolous.

### B. Personal Property

Plaintiff alleges that, prior to his transfer to the HRYCI, Williamson confiscated his personal property and did not send it to the HRYCI. A prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless no adequate post-deprivation remedy is available. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled on other grounds by*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has available to him the option of filing a common law claim for conversion of property. Inasmuch as Delaware law provides an adequate remedy for Plaintiff, he cannot maintain a cause of action against Williams pursuant to § 1983. *See Hudson*, 468 U.S. at 535; *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157 (D. Del. 2001).

As currently presented, the claim against Williamson lacks an arguable basis in law or in fact and must, therefore, be dismissed as frivolous. *See Neitzke*, 490 U.S. at 325. Therefore, it will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[6]

### C. State Actor

Plaintiff alleges that Rosen interfered with the parole hearing when he appeared on Plaintiff's behalf. Rosen is a public defender for the State of Delaware. Public defenders do not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in criminal proceedings. *See Polk County v. Dodson*, 454 U.S. 312 (1981). Because Rosen is not a state actor, the § 1983 claim fails as a matter of law. The claim against Rosen is frivolous and will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### D. Personal Involvement/Respondeat Superior

Once again, Plaintiff names Elder as a defendant on the basis of his supervisory position. The claims against him were previously dismissed by the Court, but Plaintiff reinstated Elders as a defendant. Plaintiff also mentions, in passing, Robinson as another individual who retaliated against him.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The

---

[6]Plaintiff will be allowed to proceed with the claim that Williamson confiscated the property in retaliation for complaints made by Plaintiff.

8

Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior, and that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (not published) (citing *Iqbal*, 129 S.Ct. at 1948-49); *Rode*, 845 F.2d at 1207.

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit . . . masters do not answer for the torts of their servants . . . [and] the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *See id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates'

9

violations." *Santiago v. Warminster Twp.*, ___ F.3d ___, No. 10-1294, 2010 WL 5071779, at *4 n.5 (3d Cir. Dec. 14, 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at *5.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 2010 WL 6082779 at * 5 n.8; *see, e.g., Bayer v. Monroe County Children and Youth Servs.*,577 F.3d 186, 190 n.5 (3d Cir. 2009) (noting, in light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). It appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[7] *See Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the

---

[7] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

deprivation of a plaintiff's constitutional rights or created policies which the subordinates had no discretion in applying in a fashion other than in the fashion which actually produced the alleged deprivation. That is, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal,* 129 S.Ct. at 1949-54; *City of Canton v. Harris,* 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240 (3d Cir. Apr. 11, 2005) (not published).

Plaintiff alleges that Elders violated his rights by reason of his supervisory position. The Complaints fails to provide facts how Elders violated his constitutional rights, that Elders expressly directed the deprivation of his constitutional rights, or that he created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Plaintiff has not alleged facts to support personal involvement on behalf of Elders. Finally, the only claim against Robinson is that counselor Marvel was aware of retaliation by Robinson but did nothing about it. The claim provides no facts, is a conclusory legal conclusion that does not show an entitlement to relief against Robinson, and it is frivolous.

Accordingly, the Court will dismiss as frivolous all claims against Elders and Robinson pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### E. Habeas Corpus

Plaintiff alleges that his thirty-three year sentence should be shortened as a result of the improper calculation of his good time credits. To the extent that Plaintiff attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *See Preiser v. Rodriguez,* 411 U.S. 475 (1973).

11

Furthermore, a plaintiff cannot recover under § 1983 for alleged wrongful incarceration unless he proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 312 U.S. 477, 487 (1994).

Because Plaintiff seeks damages for allegedly unconstitutional imprisonment, *Heck* requires Plaintiff's success in attacking the calculation of the sentence before he may properly bring suit pursuant to § 1983. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (finding prisoner's suit barred by *Heck* because nullification of disciplinary procedures would lead necessarily to restoration of good-time credits and consequent shortening of prisoner's sentence). Here, Plaintiff indicates that he challenged the purportedly improper calculation but the Delaware Superior Court refused to address the issue. To the extent Plaintiff seeks damages for his current incarceration, his claim rests on a legal conclusion and is frivolous. *See Neitzke*, 490 U.S. at 326.

Accordingly, the Court will dismiss the sentence calculation claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

## V. **CONCLUSION**

For the reasons discussed, the Court will allow Plaintiff to proceed on the retaliation claims in the Second Amended Complaint against Evans, Prince, Williamson, and Salaam. The Court will dismiss as frivolous the remaining claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1); all claims against Elders, Rosen, Robinson, and Lang; and the good time credits calculation and deprivation of personal property claims. As previously determined by the Court

in its June 21, 2010 Memorandum Opinion and Order, Plaintiff may proceed against Evans, Moffett, and Hernandez.

An appropriate Order follows.