IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VINCENT D. ALLEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 09-938-LPS |
| | : | |
| AARON PRINCE, et al., | : | |
| | : | |
| Defendants. | : | |

---

Vincent D. Allen, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

Kenisha LaShelle Ringgold Oliva, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Deputy Warden Carole Evans, Lt. Christina Maffia, Sgt. Hernandez, Bruce Williamson, and Khalid Abdussalaam.

**MEMORANDUM OPINION**

September 17, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Vincent D. Allen ("Plaintiff"), an inmate at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] (D.I. 2, 21, 31) He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) Presently before the Court is Plaintiff's motion for default judgment as to Defendant Aaron Prince ("Prince") and a motion for summary judgment filed by Defendants Deputy Warden Carole Evans ("Evans"), Lt. Christina Maffia ("Maffia"),[2] Sgt. Hernandez ("Hernandez"), Bruce Williamson ("Williamson"), and Khalid Abdussalaam ("Abdussalaam")[3] ("State Defendants").[4] For the reasons that follow, the Court will deny Plaintiff's motion for default judgment without prejudice to renew and will grant in part and deny in part State Defendants' motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, who is black, alleges that in August 2009 while housed at the Plummer Community Corrections Center ("PCCC") in Wilmington, Delaware, he was treated differently from white inmates during an investigation of wrongdoing, a subsequent hearing, and imposition

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Misnamed by Plaintiff as Lt. Moffett.

[3] Misnamed by Plaintiff as Abdull Salaam.

[4] Prince was not a state employee when Plaintiff initiated the instant lawsuit and is not represented by the Delaware Department of Justice. (*See* D.I. 75 n.1)

1

of punishment. (D.I. 2) In addition, he alleges retaliation against after he submitted grievances and filed the instant lawsuit. (D.I. 21, 31) Following screening of the original Complaint, Plaintiff was allowed to proceed against Evans, Maffia, and Hernandez on equal protection/race discrimination claims. (D.I. 10, 11) Plaintiff amended and, upon screening of the Amended Complaints, he was allowed to proceed with retaliation claims against Prince, Evans, Williamson, and Abdussalaam. (D.I. 29, 30) All other claims and defendants were dismissed.

Plaintiff was a resident at the PCCC and participated in the Crest substance abuse program.[5] He entered the Crest program on July 8, 2009. (D.I. 75 Ex. D) Plaintiff's equal protection/discrimination claims against Evans, Maffia, and Hernandez are related to the investigation of theft at the PCCC. On August 3, 2009, a vending machine was accidently left unlocked in the multi-purpose room. (D.I. 75 Ex. A at ¶ 2) The vending machine was looted by numerous offenders housed at the PCCC. (*Id.*) An investigation took place after the thefts were reported. (*Id.* at ¶ 3) A video recording of the multi-purpose room showed numerous offenders standing in front of the vending machine but, because of crowding, not all of the offenders could be identified. (*Id.*)

Plaintiff was one of the offenders identified on the surveillance video stealing items from the vending machine. (*Id.* at ¶ 4) He was seen walking over to the machine, removing merchandise, and leaving the multi-purpose room with the merchandise in his hand. (*Id.*) In addition, Plaintiff was housed in the Crest housing unit and, when he left the multi-purpose

---

[5]"The Crest program is the second part of a three-step substance abuse treatment program. Key is the first phase of the program and Aftercare is the third phase." *Campbell v. Hooper*, 2011 WL 2443762 at *1 n.2 (D. Del. June 14, 2011).

room, he used a prohibited entrance to the second floor where he was housed, rather than the access he was permitted via the exterior staircases to the second floor. (*Id.*)

Hernandez reported to the second floor housing unit and located Plaintiff. (*Id.* at ¶ 5) The area was searched, but no merchandise was discovered. (*Id.*) Hernandez escorted Plaintiff to the duty office for questioning. (*Id.*) Plaintiff initially admitted to stealing the items, but later he recanted and stated that he purchased the items from someone who was leaving the multi-purpose room. (D.I. 75 Ex. A at ¶ 5; Ex. B; Ex. C at 20) Plaintiff overheard a conversation that Maffia had with two white inmates regarding the theft. (*Id.* at 24) Plaintiff could hear what Maffia was saying to the white inmates, but he could not hear their responses. (*Id.* at 25) At the time, Plaintiff was with other black inmates in a holding cell and they were all were shackled and handcuffed. (*Id.* at 25) All the black inmates were shackled and handcuffed while the white inmates had "stuff on their person" and were not handcuffed or shackled. (*Id.* at 25-27)

According to Hernandez, disciplinary action was taken against Plaintiff and other offenders based upon "clearly identifying them on video." (D.I. 75 Ex. A at ¶ 6) Plaintiff received a program violation for being off limits, disorderly behavior, and violating the PCCC's policy against theft. (*Id.* at ¶ 7) He was sentenced to twenty-eight days at the Sussex Violation of Probation Center ("SVOP") in Georgetown, Delaware. (*Id.*)

Plaintiff was told that there were other people who were involved; he "guess[ed] they admitted to it, [and] they were released." (*Id.* at 21) According to Plaintiff, the whites "never received a write-up or nothing." (*Id.* at 26) Plaintiff testified that he knew the whites did not receive a write-up based upon "their conversations" and because "after [his] thirty days, [he] came back. They were still there. As a matter of fact, they was going out to work and everything

3

else." (*Id.*) Plaintiff did not see any records regarding sanctions, and he does not know the names of, or know, any of the white inmates. (*Id.*)

Plaintiff named Hernandez as a defendant because "he was negligent in his investigation." (D.I. 75 Ex. C at 20) Plaintiff named Maffia as a defendant because "it was a race thing." (*Id.* at 25)

The retaliation claims against Prince, Evans, Williamson, and Abdussalaam stem from an incident beginning on March 2, 2010 when Prince, who was the director of the Crest program, issued Plaintiff a warning of termination from the Crest program. (D.I. 75, Ex. C at 37; Ex. D) The warning referred to: (1) "consistent behavioral problems and basic rules violations; and (2) on multiple occasions [Plaintiff] failed to follow protocol with submitting 4 or more grievances." (D.I. 75 Ex. D) Plaintiff was informed that failing to adhere to the program rules with regard to conduct and filing grievances could result in his immediate discharge from the Crest program. (*Id.*) Plaintiff testified that Prince told him that he was tired of Plaintiff filing grievances against him and that he would terminate Plaintiff from the Crest program the next time he "did it." (D.I. 75, Ex. C at 37) Plaintiff submitted four more grievances. (*Id.*) Then Plaintiff decided not to file any more grievances "because of the retaliation." (*Id.*)

On March 5, 2010, Williamson cuffed and escorted Plaintiff to the Crest housing unit from the Middle Building where he was "off-limits." (D.I. 75 Ex. C at 37-38; Ex. D) At the time, Plaintiff should have been "in-group" with other Crest North residents. (*Id.*) Williamson told Plaintiff the issue was between Plaintiff and Crest, but Plaintiff disagreed, stating, "it's not between just me and Crest." (D.I. 75 Ex. C at 37-38) Williamson left Plaintiff at the Crest group area. (D.I. 84 Bey Aff.) Once Williamson left, Prince began hollering, "Yea, I got you now

4

grievances can't save you," and Plaintiff walked out. (*Id.*) As a result of the violation, as well as other factors – including numerous prior violations – the Crest treatment staff recommended Plaintiff's immediate discharge from the program. (D.I. 75 Ex. D) Prince signed the discharge report on March 5, 2010. (*Id.*) Plaintiff was moved out of the Crest program. (D.I. 75 Ex. C at 39) The same day, Plaintiff submitted a grievance regarding his discharge from the Crest program, complaining that Prince's actions were retaliatory.[6] (D.I. 75 Ex. G) The grievance was classified as "non grievable." (*Id.*)

On March 8, 2010, Abdussalaam wrote a violation report alleging that Plaintiff had violated conditions imposed by the Delaware Board of Parole. (D.I. 75 Ex. E) The violation report was reviewed, approved, and signed by his supervisor, Evans. (*Id.*) The report states that Plaintiff has "placed countless grievances due to not having all of his wa[nt]s addressed by staff. . . . [Plaintiff] spent time with the Deputy Warden due to the need to hear his grievances which in most cases were discharged by him." (*Id.*) The report was forwarded to the Delaware Board of Parole, and it found Plaintiff in violation of his parole conditions. (*Id.*) Plaintiff was remanded to the HRYCI, where he remains.

Plaintiff testified that Williamson was not involved in retaliation and that he named Williamson as a defendant because he had knowledge of Plaintiff's termination in the Crest program and Plaintiff's issues with Prince. (D.I. 75 Ex. C at 37-38) Williamson knew there was a conflict between Plaintiff and Prince over the grievances; Williamson had contacted the chairman of the Parole Board and had him come over to try to resolve issues. (*Id.* at 38)

---

[6]The State of Delaware Bureau of Community Corrections has implemented standard operating procedures with regard to the filing of grievances. (*See* D.I. 75 Ex. F)

Plaintiff named Evans as a defendant on the retaliation claim because she signed all the reports. (*Id.*) Plaintiff testified that there was never an investigation, there was no hearing, and he was not written up on his discharge from the Crest program and transfer to the HRYCI. (*Id.* at 39-40)

Plaintiff named Abdussalaam as a defendant because he was Plaintiff's treatment counselor, Plaintiff talked to him about the problems he was having, and Abdussalaam told the Board of Parole that it was not in the institution's best interest for Plaintiff to return to the Crest program or the PCCC. (*Id.* at 40-42)

### III. MOTION FOR DEFAULT JUDGMENT

Plaintiff has filed a third motion for default judgment against Prince. (*See* D.I. 79) Plaintiff previously filed motions seeking a default judgment against Prince in August and November 2012. (*See* D.I. 70, 73) The motions were denied without prejudice as premature. (*See* D.I. 77)

Entry of default judgment is a two-step process. *See* Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the Clerk of the Court "enter. . .the default" of the party that has not answered the pleading or "otherwise defend[ed]" within the time required by the rules or as extended by court order. *See id.* at 55(a). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). As previously noted by the Court in its March 1, 2013 Memorandum Order (D.I. 77), there is no indication in the record that, to date, Plaintiff has requested that the Clerk of Court enter the default of Prince. Plaintiff has yet to request entry of default.

6

Accordingly, the motion for default judgment will be denied without prejudice as premature.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

7

U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

State Defendants move for summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies; (2) there are no genuine issues of material facts; (3) Defendants are protected from liability for Plaintiff's claims by the doctrine of qualified immunity; and (4) Plaintiff has not provided a causal link between any State Defendant and any alleged retaliation due to any protected constitutional activity. Plaintiff opposes the motion.

B.  **Discussion**

1.  **Exhaustion of Administrative Remedies**

State Defendants contend that Plaintiff failed to exhaust his administrative remedies, which is required by the Prison Litigation Reform Act ("PLRA"). Plaintiff responds that he filed numerous grievances against the staff and operation of the Crest program and that his grievance regarding his removal from the Crest program was classified as "non-grievable." Plaintiff notes that State Defendants are in possession of the originals of all grievances he submitted, but they failed to provide copies of the grievances.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *See Jones v. Bock*, 549 U.S. 199 (2007). The burden is on State Defendants to prove non-exhaustion. *See Small v. Camden Cnty.*, __F.3d__, 2013 WL 4504761, at *3 (3d Cir. Aug. 26, 2013).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Under *Woodford v. Ngo*, 548 U.S. 81 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance

with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *See Jackson v. Ivans*, 244 F. App'x 508, 513 (3d Cir. Aug. 8, 2007) (citing *Woodford*, 548 U.S. at 95) ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA does not require the grievance and complaint to be identical; and inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner, supra.*

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *See Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. May 12, 2008) (citing *Williams*, 482 F.3d at 639; *Spruill,* 372 F.3d at 228, 231).

The State of Delaware Bureau of Community Corrections (which includes the PCCC) has standard operating procedures for the filing of grievances. (*See* D.I. 75 Ex. F; Delaware Bureau of Community Corrections Procedure No. 2.4, Oct. 20, 2006) First, any grievance shall be forwarded to the counselor supervisor for review and determination as to a basis for the action to proceed through Delaware Department of Correction ("DOC") channels. (*Id.* at IV.D.2. Grievances) If the grievance appears to be valid and should proceed, the counselor supervisor has two options: (1) to meet with the offender and a representative and attempt to reach an

informal resolution; or (2) forward the grievance form and related documents to the Multi-Disciplinary Team ("MDT") chair for a hearing. (*Id.*) If the grievance is a DOC matter, but a determination is made that it is without merit, efforts still should be made to have the offender reach an understanding with regard to the issue. (*Id.*) Classification decisions are not subject to review. (*Id.*) In addition, complaints involving food service or medical services are forwarded to the supervisor of the particular service for processing in accordance with their specifications. (*Id.*) Finally, grievances from Crest participants and/or complaints about that program should be forwarded to the particular program director for processing in accordance with their corporate requirements. (*Id.*)

State Defendants argue that Plaintiff did not exhaust his administrative remedies with regard to the equal protection/race discrimination claim because he did not submit his grievances in adherence to policy. State Defendants contend that, with regard to the equal protection/race discrimination claim, instead of filing grievances through the program director, Plaintiff wrote to various DOC officials.[7] With regard to the retaliation claims, State Defendants contend that Plaintiff's grievance regarding his termination from the Crest program, transfer from the PCCC, and retaliation does not mention any State Defendant's name or refer to specific action by any State Defendant.

Upon review of the record and exhibits submitted, the Court finds that State Defendants did not meet their burden to prove that Plaintiff failed to exhaust his administrative remedies. With regard to the equal protection/race discrimination claims, it is undisputed that Plaintiff

---

[7]In their supporting brief, State Defendants cite to page 34 of Plaintiff's deposition transcript to support their position, but they did not provide the cited pages to the Court. Therefore, the reference to page 34 is not considered.

submitted "countless grievances" and he spent time with the deputy warden, due to the need to hear his grievances. The record does not contain any of the "countless grievances" other than the grievance on the issue of Plaintiff's termination from the Crest program, transfer from the PCCC, and retaliation. Hence, the Court cannot determine what issues Plaintiff raised in his grievances. Nor does the record support State Defendants' position that Plaintiff did not follow the appropriate process when submitting grievances. The dearth of grievances contained in the record make it impossible for the Court to determine if Plaintiff followed the appropriate process for any or all of the grievances he submitted.

With regard to the March 5, 2010 grievance complaining of retaliation, the record supports a finding that Plaintiff exhausted his administrative remedies. The grievance complains that Plaintiff was retaliated against for submitted grievances and, as a result, he was terminated from the Crest Program and transferred from the PCCC. That Plaintiff did not mention any State Defendant by name or reference specific acts by any State Defendant is not material, as there is a shared factual basis between Plaintiff's allegations and his grievance and perfect overlap is not required. In addition, once Plaintiff's grievance was classified as non-grievable, there were no further administrative remedies available to Plaintiff.

Accordingly, the Court will deny State Defendants' motion for summary judgment on the issue of failure to exhaust administrative remedies.

### 2. Equal Protection/Discrimination

State Defendants move for summary judgment on the grounds that Plaintiff's claim of racial animus and discrimination is conclusory, and the record reflects that Plaintiff was treated in accordance with the evidence against him. The claims are raised against Evans, Maffia, and

Hernandez. Plaintiff responds that he has raised allegations that he was treated differently from other similarly situated inmates, including white inmates, the treatment was intentional, and there was no basis for the difference in treatment.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to raise a valid equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To the extent that Plaintiff asserts his claims under a "class-of-one" theory, the standard is similar in that Plaintiff can prevail only if he shows "'that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium)). Finally, to demonstrate a violation of the Equal Protection Clause, a plaintiff must show more than discriminatory impact. *See Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "[A]n official act is not unconstitutional solely because it has a racially disproportionate impact." *Williams v. Federal Bureau of Prisons and Parole Comm'n*, 85 F. App'x 299, 305 (3d Cir. Jan. 7, 2004) (citations omitted).

Plaintiff believes that white inmates were treated differently during actions taken as a result of the theft. Plaintiff testified that only black inmates were restrained and/or sanctioned. The record reflects that during the investigation, Plaintiff heard only questioning to white inmates, not their responses. Nor was Plaintiff privy to the results of the investigation conducted

by State Defendants. Hence, he does not know who was identified via the videotape. In addition, Plaintiff could not specifically identify any white inmates involved in the incident. Finally, it is far from clear that Plaintiff was similarly situated to white inmates questioned in the theft matter, given that Plaintiff was also seen using a prohibited entrance to his housing unit and the record does not reflect that any other individuals were seen taking the same action.

Further, the record supports a finding that State Defendants had a rational basis for the action taken against Plaintiff. Plaintiff was identified on a video recording taking items from the vending machine, he was seen using an unauthorized entrance to his housing unit, and he initially confessed to taking merchandise from the vending machine (although he later recanted). It is clear from the record that Plaintiff committed several infractions. Rather than supporting a finding that State Defendants acted with discriminatory purpose, the record indicates that State Defendants took appropriate action to maintain the safety and security of the PCCC.

The Court finds that no reasonable jury could find for Plaintiff on his equal protection/ discrimination issue. Therefore, the Court will grant State Defendants' motion for summary judgment on the equal protection/discrimination issue.

### 3. Retaliation

State Defendants move for summary judgment on the retaliation claims raised against Evans, Williamson, and Abdussalaam on the grounds that there is no temporal connection between the filing of Plaintiff's lawsuits and grievances and his discharge from the PCCC. Plaintiff opposes the motion on the grounds that there are genuine issues of fact and, therefore, summary judgment is in appropriate.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Proof of a retaliation claim requires Plaintiff demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *See id.*

Plaintiff filed his original complaint on December 7, 2009. On March 5, 2010, he was discharged from the Crest Program and, later, was transferred from the PCCC to the HRYCI. On

November 3, 2010 and March 29, 2011, Plaintiff amended his complaint to add retaliation claims against Prince, Evans, Williamson, and Abdussalaam. Although the record reflects that Plaintiff filed numerous grievances, the Court was only provided with one grievance submitted by Plaintiff. That grievance was submitted on March 5, 2010, and it alleged retaliatory conduct.

Plaintiff testified that Williamson was not involved in retaliation, but he named Williamson as a defendant because Williamson had knowledge of Plaintiff's termination in the Crest program and Plaintiff's issues with Prince. Those facts do not rise to the level of a retaliation claim.

Plaintiff named Evans as a defendant because she signed all the reports, but Plaintiff was not written up, and there was no an investigation or hearing when he was terminated from the Crest program and transferred to the HRYCI. The record reflects that Evans was Abdussalaam's supervisor and she signed off on his reports. There is no evidence of record that Evans' actions were the result of grievances submitted by Plaintiff or the instant lawsuit. Instead, the record reflects that a substantial or motivating factor in terminating Plaintiff from the Crest program and transferring him to the HRYCI was his numerous violations. Indeed, Plaintiff received twelve sanctions during an eight-month period for violating Crest Program and/or PCCC policies.

Plaintiff named Abdussalaam as a defendant because he was Plaintiff's treatment counselor, Plaintiff talked to him about the problems he was having, and Abdussalaam told the Board of Parole that it was not in the institution's best interest to return Plaintiff to the Crest program or the PCCC. The record does not, however, reflect that Abdussalaam took the actions he did after Plaintiff exercised his First Amendment rights. Instead, the record reflects that a

substantial or motivating factor for Abdussalaam taking the actions he did was Plaintiff's numerous violations of policies of the Crest program and the PCCC.

Plaintiff provides the Court with nothing more than allegations of retaliatory conduct by Evans, Williamson, and Abdussalaam. Based upon the evidence of record, the Court finds that Plaintiff failed to meet his burden to demonstrate a causal link between the filing of his complaint and the conduct of which he complains. Moreover, even had Plaintiff met his burden, State Defendants have shown that the same disciplinary action would have been taken without the protected activity.

The Court finds that no reasonable jury could find for Plaintiff on his retaliation claims against Evans, Williamson, and Abdussalaam.[8] Therefore, the Court will grant State Defendants' motion for summary judgment on the issue of retaliation.

## V.     **CONCLUSION**

For the above reasons, the court will grant in part and deny in part State Defendants' motion for summary judgment (D.I. 74) and will deny without prejudice to renew Plaintiff's motion for default judgment (D.I. 79) as to Prince.[9]

An appropriate Order follows.

---

[8]The Court does not consider the retaliation claim raised against Prince at this juncture.

[9]The Court will not address the issue of qualified immunity, given that summary judgment is appropriate on other grounds.